PLAINTIFF'S EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

ARBITRON, INC.,                        :

           Plaintiff,       :

   - against -                        :         **MEMORANDUM DECISION**

MARATHON MEDIA, LLC, d/b/a             :         07 Civ. 2099 (DC)
KRKI-FM, and LAKESHORE MEDIA, LLC,     :
d/b/a KRKI-FM/KXDC-FM, as
successor in interest to               :
MARATHON MEDIA, LLC,
                                       :
           Defendants.
                                       :
- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**    DICKSTEIN SHAPIRO LLC
                  Attorneys for Plaintiff
                      By:  Alfred R. Fabricant, Esq.
                          Lawrence C. Drucker, Esq.
                          Peter Lambrianakos, Esq.
                  1177 Avenue of the Americas
                  New York, NY  10036

                  LOCKE LORD BISSELL & LIDDELL LLP
                  Attorneys for Defendants
                      By:  Jay G. Safer, Esq.
                          Allen C. Wasserman, Esq.
                          Sarah M. Chen, Esq.
                  885 Third Avenue, 26th Floor
                  New York, NY  10022

**CHIN, District Judge**

       On August 20, 2007, this Court entered a default judgment against defendants Marathon Media, LLC ("Marathon") and Lakeshore Media, LLC ("Lakeshore") in the amount of $722,375.51. Before the Court is defendants' motion to set aside the judgment. For the reasons that follow, the motion is denied. The judgment will stand.

## BACKGROUND

### A. The Facts

As alleged in the complaint, the facts are as follows:

Plaintiff Arbitron, Inc. ("Arbitron") is a marketing research company that produces and distributes reports that measure, among other things, the size of radio audiences throughout the United States. (Compl. ¶ 8). It also provides consumer market research to its customers, including, for example, information regarding demographics, media usage, and shopping patterns. (Id. ¶ 9). Arbitron is a Delaware corporation with its principal place of business in New York. (Id. ¶ 1).

During the relevant time period, Marathon owned and operated a radio station in Denver, Colorado, with the call letters KRKI-FM. (Id. ¶ 2). Lakeshore is the successor-in-interest to Marathon and it currently operates the radio station KRKI-FM. (Id. ¶¶ 3, 4). Marathon and Lakeshore are Illinois limited liability companies with their principal places of business in Illinois. (Id. ¶¶ 2, 3).

In or about October 2000, Marathon entered into four contracts with Arbitron, pursuant to which Arbitron agreed to provide Marathon with "Arbitron Reports" and other services and products. (Id. ¶¶ 2, 12 & Exs. 1-4). Thereafter, although Arbitron performed its obligations under the agreements and provided its reports and services, Marathon failed to meet its payment obligations. (Id. ¶¶ 13-17).

B.  **Prior Proceedings**

Arbitron commenced this action on March 12, 2007. The complaint asserts claims for breach of contract and account stated, and Arbiton seeks the amounts due under the contracts as well as interest and attorneys' fees pursuant to the terms of the contracts. (Id. ¶¶ 18-31). Subject matter jurisdiction is based on diversity of citizenship of the parties. (Id. ¶¶ 1-3, 6).

On March 30, 2007, Arbitron filed proofs of service of the summons and complaint on Marathon and Lakeshore. (2/4/08 Fabricant Decl., Exs. B, C). Marathon and Lakeshore did not answer the complaint or otherwise appear in the action. (Id. ¶ 5). On April 17, 2007, Arbitron filed a "Request for Clerk's Certificate of Default," and copies were mailed to both Marathon and Lakeshore. (Id. ¶ 6 & Ex. D). Marathon and Lakeshore did not respond. On July 19, 2007, Arbitron filed a motion for a default judgment, again sending copies of the papers to both Marathon and Lakeshore. (Id. ¶ 7 & Ex. E). Again, Marathon and Lakeshore did not respond. On August 20, 2007, the Court entered the default judgment, and as Arbitron had done with the other papers, it sent copies of the default judgment to defendants.

Finally, by order to show cause filed January 3, 2008, defendants brought on this motion to vacate the default judgment.

C.  **Service of Process**

The affidavits of service show that the process server served the summons and complaint on Marathon and Lakeshore at their offices in Illinois on March 19, 2007:

> by personally delivering and leaving the same with <u>Brooke Lada</u> who informed deponent that <u>she</u> holds the position of <u>Auth. to Accept</u> with that company and is authorized by appointment to receive service at that address.

(2/4/08 Fabricant Decl., Exs. B, C). The underscored portions were written in hand and the rest of words were typed.

In moving to set aside the default judgment, defendants submit an affidavit from Lada, who attests to the following: At the time in question, she worked for Lakeshore as a receptionist at the offices where service was made. (1/28/08 Lada Aff. ¶ 2). Lakeshore shared the offices with Marathon. (<u>Id.</u>). Her duties as receptionist did not include acceptance of legal process, and at no time during her employment as a receptionist at Lakeshore was she authorized to accept legal service for Lakeshore or Marathon. (<u>Id.</u> ¶¶ 3, 4). From time to time Lakeshore and Marathon were served with legal papers, and her "regular practice" was to notify either Chris Devine (a managing member of Lakeshore) or Bruce Buzil (a member of both Lakeshore and Marathon) to ask that they come to the front desk to receive the papers. (<u>Id.</u> ¶ 5; <u>see</u> 1/29/08 Bonick Aff. ¶ 4). She would not "ever" accept service of process on the companies herself. (1/28/08 Lada Aff. ¶ 6). On the other hand, she has "no specific recollection" of the service in this case. (<u>Id.</u> ¶ 7).

Richard J. Bonick, the Vice President of Finance of Lakeshore, also submits an affidavit in support of the motion to set aside the default. He states that "[u]nder no circumstances would a receptionist have been authorized to accept service."

- 4 -

(1/29/08 Bonick Aff. ¶ 5). He acknowledges, however, that the summons and complaint were received by defendants. He states:

> I have determined that at some point after the summons and complaint were served, they were given to Lee Sussman, a vice president of finance at the time, and he, in turn, gave them to Daniel O'Donnell, who was the Chief Financial Officer for Lakeshore. At or about that time, Mr. O'Donnell was involved in a major acquisition and, because there was no general counsel to give the papers to, he apparently lost sight of the matter and the relevant deadlines.

Id. ¶ 11). Bonick also acknowledges that defendants received a copy of the default judgment in August 2007, and that they turned to outside counsel at that time "to determine what our legal rights were and how we needed to respond." (Id. ¶ 12).

This motion to set aside the default judgment, however, was not filed until more than four months later.

## DISCUSSION

Defendants' motion to set aside the default judgment presents two issues. The first is whether defendants were properly served with the summons and complaint. If not, the default judgment must be vacated. See Grace v. Bank Leumi Trust Co., 443 F.3d 180, 193 (2d Cir. 2006) (judgment issued by court without personal jurisdiction over defendant is void); 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2682, at 14 (3d ed. 1998) ("Before a default can be entered, the court must have jurisdiction over the party against whom the judgment is sought.") (footnote omitted). If service of process was proper, the second issue is whether the

Court should set aside the default judgment pursuant to Fed. R. Civ. P. 60(b)(1) for excusable neglect.

A.  **Was Service of Process Proper?**

1.  **Applicable Law**

Rule 4(h)(1) of the Federal Rules of Civil Procedure provides that a corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual."[1] Rule 4(e)(1) authorizes service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." As defendants were served in Illinois, service was proper if it complied with either New York or Illinois law.

a.  **New York Law**

Under New York law, personal service may be made on a corporation "by delivering the summons . . . to an officer, director, managing or general agent, or cashier or assistant cashier or to any agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311(a)(1) (McKinney 2001).

Although it is true, as defendants assert, that an administrative employee such as a receptionist or receptionist generally is not an "agent" authorized to accept service of

---

[1] The 2007 amendments did not amend Rule 4 in any respect material here. Rule 4(h)(1) provides that a corporation may also be served by delivery of the summons and complaint to an officer or managing or general agent or other authorized agent, but requires that copies be served by mail as well. Fed. R. Civ. P. 4(h)(1)(B).

- 6 -

process, see, e.g., M. Prusman, Ltd. v. Ariel Maritime Group, Inc., 719 F. Supp. 214, 219 (S.D.N.Y. 1989), numerous decisions have upheld service where a secretary or receptionist accepted the papers and the corporate defendant in fact received them. See, e.g., M'Baye v. World Boxing Ass'n, 429 F. Supp. 2d 652, 659-60 (S.D.N.Y. 2006) (upholding service on corporation where papers were left with receptionist at its offices and corporation had actual notice of suit); Dai Nippon Printing Co. v. Melrose Publ'g Co., 113 F.R.D. 540, 544 (S.D.N.Y. 1986) (upholding service on corporation where papers were left on receptionist's desk after corporate officer refused them); Kuhlik v. Atlantic Corp., 112 F.R.D. 146, 148 (S.D.N.Y. 1986) (upholding service on corporation where receptionist accepted papers, stating that "she could accept" papers, after she was unable to find someone else "in charge" who could accept them). In fact, even in M. Prusman, Ltd., the decision relied on by defendants for the proposition that generally receptionists and secretaries are not authorized to accept service of process, the court upheld service on the corporate defendants where a secretary at the corporate offices accepted the papers. 719 F. Supp. at 217, 219-20.

The leading New York case in this respect is Fashion Page, Ltd. v. Zurich Insurance Co., where a summons was delivered to the secretary for the vice president of a corporate defendant. 428 N.Y.S.2d 890, 891 (1980). The secretary was not an agent authorized to accept service on behalf of the corporation. Id. at 891-92. The Court of Appeals nonetheless upheld the service,

- 7 -

explaining that "the purpose of CPLR 311 (subd. 1) is to give the corporation notice of the commencement of the suit." Id. at 893. The Court further held that "if service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained." Id. at 894; accord M'Baye, 429 F. Supp. 2d at 659-60.

### b. Illinois Law

The Illinois Code of Civil Procedure is not substantially different from § 311 of the C.P.L.R.: "[a] private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law." 735 Ill. Comp. Stat. Ann. 5/2-204 (West 2002). If anything, Illinois law appears to be even more liberal in allowing service by delivery of the papers to a clerical employee at the corporation's offices, as service is permitted on "any . . . agent of the corporation found anywhere in the State." Id. Hence, under Illinois law "service upon an intelligent clerk of a company who acts as a receptionist and who understood the purport of the service of summons was sufficient." Megan v. L.B. Foster Co., 275 N.E.2d 426, 427-28 (Ill. App. 1971) (upholding service on corporation by delivery of papers to "clerk-receptionist" in corporation's office).

### 2. Application

I conclude that service here was proper, under both New York and Illinois law. Service on Lada was certainly sufficient

- 8 -

under Illinois law, for Lada was an "agent" of both Lakeshore and Marathon located within the state -- she was the receptionist in their corporate offices and accepted the papers for both Lakeshore and Marathon. As her affidavit shows, she was an "intelligent" receptionist who appreciated the importance of legal papers. She accepted the papers and got them into the hands of senior personnel; the papers made their way to the vice president of Finance and the chief financial officer. Although she now denies that she was authorized to accept legal process, she took the papers, apparently without objection, and without advising the process server that she was unable to accept them. Accordingly, the service was valid under Illinois law.

Likewise, I hold that the service was proper under New York law. The process server proceeded in a manner that was reasonably calculated to give defendants notice of the suit -- the process server went to their corporate offices, spoke to the receptionist, and delivered the papers to her. Although Lada now states that she does not recall the specific exchange, she undeniably accepted the papers. Even assuming she was generally not authorized to accept legal process, she accepted the papers on this occasion. Moreover, the process server executed affidavits contemporaneously, when the matter was still fresh in her mind, stating that Lada represented that she was authorized to accept the papers.

In contrast, now months later, Lada cannot recall the specific transaction. Her statement of her general lack of

authorization and her general practice, coupled with her lack of a specific recollection as to this delivery and the fact that she did accept the papers, are not sufficient to outweigh the process server's specific recollection. Finally, there is nothing in these facts to suggest that somehow the process server deceived Lada into accepting papers that she otherwise would have rejected. The process server acted reasonably, and defendants received actual notice of the suit. See M'Baye, 429 F. Supp. 2d at 657 ("when a process server 'serves someone who does not have express authorization to accept service for a corporation, service is proper under N.Y. C.P.L.R. § 311 if it is made in a manner which, objectively viewed, is calculated to give the corporation fair notice of the suit'" (quoting Krape v. PDK Labs Inc., 194 F.R.D. 82, 85 (S.D.N.Y. 1999)).

## B. Should the Default Judgment Be Set Aside?

### 1. Applicable Law

Rule 60(b) of the Federal Rules of Civil Procedure provides that the court, "on motion and just terms,"[2] may relieve a party from a final judgment for, among other things, "excusable neglect." Fed. R. Civ. P. 60(b)(1). The Second Circuit has expressed its preference that "litigation disputes be resolved on the merits, not by default." Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995).

---

[2] This language is from the amended version of Rule 60(b) that took effect December 1, 2007. The change was stylistic only.

- 10 -

When considering a Rule 60(b)(1) motion to vacate a default judgment, a court will consider whether (1) the default was wilful; (2) the defendant has a meritorious defense; and (3) the plaintiff would be prejudiced if the motion were granted. <u>State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada</u>, 374 F.3d 158, 166-67 (2d Cir. 2004); <u>Gucci America, Inc. v. Gold Ctr. Jewelry</u>, 158 F.3d 631, 634 (2d Cir. 1998); <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 96 (2d Cir. 1993). Bad faith is not a "necessary predicate" to a finding of wilfulness; "it is sufficient that the defendant defaulted deliberately." <u>Gucci America</u>, 158 F.3d at 635.

2. **Application**

I consider the three factors.

a. **Wilfulness**

First, defendants defaulted deliberately. By their own admission, two senior corporate officers had actual notice of the suit, but defendants did nothing. Moreover, it was not just the summons and complaint that were ignored. After defendants failed to respond to the complaint, Arbitron's counsel mailed them copies of its request for the clerk to enter the default. Defendants did not respond. Arbitron then moved for a default judgment, again sending copies of the papers to defendants. Defendants ignored these papers as well. Hence, over the course of some three and a half months, defendants received actual notice of this case three times, and yet they did nothing to respond.

The default judgment was entered in August 2007, and again Arbitron sent a copy to defendants, who consulted outside counsel right away. Yet, inexplicably, defendants waited more than four months to file this motion. Defendants' pattern of ignoring the process demonstrates clearly that they defaulted wilfully, and that they deliberately disregarded their obligation to appear and defend themselves in this lawsuit.

### b. Existence of Meritorious Defense

Second, I am not persuaded that defendants have a meritorious defense.

Arbitron has certainly made a prima facie showing that it is entitled to a judgment against Marathon and Lakeshore. It sues for the breach of four licensing agreements. The agreements show, on their face, that they were signed on behalf of "Marathon Media, LLC," by Randy Rodgers, as its general manager. (Compl., Exs. 1-4). All four of the agreements reference station KRKI-FM. (Id.).[3] From the time the agreements were executed (October 2000) until November 2002, Marathon paid license fees to Arbitron. (2/4/08 Basila Decl. ¶ 5). At that time, the license agreements were amended by addenda signed by Bonick, as Marathon's chief financial officer, and the license agreements were put on a one-year "hiatus" with all other obligations remaining the same after the one-year period expired. (1/29/08 Wasserman Decl., Exs. B, C). After Marathon defaulted,

---

[3] At some point, the call letters were changed to KXDC-FM. (See 2/1/08 Garten Decl., Exs. E, F).

- 12 -

Arbitron's representatives repeatedly contacted Bonick in an effort to obtain payment of the outstanding amounts. While these efforts were unsuccessful, Bonick never claimed that Marathon was the wrong party to the agreements or that Rogers was not authorized to enter into the agreements. (Basila Decl. ¶ 11).

Lakeshore is the "successor management company to Marathon." (2/1/08 Garten Decl. Ex. E at 2). On January 25, 2005, Bonick sent an e-mail to Arbitron to which was attached a letter dated June 9, 2005, from Bonick promising that the "entire outstanding balance" due Arbitron would be paid when KXDC was sold. (Id. Ex. B at 2). The letter was signed by Bonick, as chief financial officer of "Superior Broadcasting, LLC." (Id.). The email came from Bonick as "CFO" of Lakeshore, and his email address was listed as "rbonick@marathonmedia.com." (Id. at 1). On January 31, 2007, Daniel O'Donnell, chief financial officer of Lakeshore, wrote to Arbitron. (Id. Ex. E). O'Donnell "tried to reconstruct the history of the KXDC-FM under our ownership," and acknowledged that Arbitron's billings were "contractual," but asked for Arbitron's understanding as to "why the billings were not paid in a timely manner." (Id. at 3). He acknowledged the "sanctity of a contract," and noted that he "appreciated [that] we have some obligation in this situation," but expressed the view, in essence, that the terms of the contract were "somewhat onerous and excessive." (Id. at 3-4). He stated his hope that the matter could be resolved in a "mutually acceptable" manner. (Id. at 4).

Defendants' purported meritorious defenses do not hold water. For example, they argue that Marathon is not liable because Rodgers was not an officer of Marathon and therefore was not authorized to sign the licensing agreements. (Def. Mem. at 10). But Rodgers did sign the agreements, as "general manager," representing -- at least implicitly -- that he was authorized to do so.[4] Defendants also argue that Marathon is not liable because it was not a party to the agreements and the appearance of its name in the agreements was a typographical error. (Id. at 10). The argument is absurd. Marathon's name *is* in the agreements, repeatedly, and Rogers signed the agreements for Marathon. Most tellingly, Marathon *paid* the amounts due under the agreements for some two years. Bonick essentially ratified the agreements when he signed the addenda placing the agreements on a one-year hiatus but confirming that the agreements would resume after the one-year period expired. And O'Donnell, on behalf of Lakeshore, acknowledged the "contractual" nature of the billings without raising any objection as to whether Marathon was a party, whether Rodgers was authorized to sign, and whether Lakeshore was responsible.

Indeed, these objections to the agreements were not raised until defendants filed this motion. Not only do the objections come too late, it is clear they lack any merit.

---

[4] Remarkably, Rodgers now contends that he did not review the agreements before he signed them. (2/11/08 Rodgers Decl. ¶ 3). I reject this contention.

### c. **Prejudice To Plaintiff**

Finally, Arbitron would be prejudiced if this motion is granted. The case is already more than a year old, and Arbitron has already expended substantial resources trying to collect on the debt. If defendants' default were set aside and defendants were permitted to appear and answer, the case would, in effect, be starting anew and all of Arbitron's efforts would be wasted. Moreover, Arbitron gave defendants notice every step of the way, and defendants did nothing. In addition, defendants' actions -- both during the course of the business relationship and during these proceedings -- betray an effort, as Arbitron argues, "to shuffle assets amongst their related companies." (Pl. Mem. at 21). Defendants' arguments -- they did not read what they signed and the inclusion of "Marathon" as the licensee under the agreements was the result of a typographical error -- give me pause as they show a willingness to resort to desperate measures. Setting aside the judgment would give defendants a greater opportunity to improperly avoid or delay meeting their obligations. Indeed, defendants did not file this motion until after Arbitron had commenced ancillary proceedings in the United States District Court for the Northern District of Illinois and attached certain of defendants' assets.

## **CONCLUSION**

For the reasons set forth above, defendants' motion to set aside the default judgment entered herein is denied.

SO ORDERED.

Dated:    New York, New York
          April 1, 2008

                                    _____
                                    DENNY CHIN
                                    United States District Judge